ZURICH AMERICAN INSURANCE COMPANY, Federal Insurance Company, and National Union Fire Insurance Company, Petitioners,

v.

NOKIA, INCORPORATED, Respondent.

No. 06–1030.

Supreme Court of Texas.

Argued Feb. 6, 2008.

Delivered Aug. 29, 2008.

Rehearing Denied Dec. 5, 2008.

Thomas R. Phillips, Joseph R. Knight, Jennifer Lee Cafferty, Baker & Botts L.L.P., Austin, TX, Jeffrey S. Levinger, Hankinson Levinger LLP, Stephanie Dooley Nelson, Rebecca Lynn Visosky, Carrington Coleman Sloman & Blumenthal, L.L.P., Allyson Newton Ho, Baker & Botts L.L.P. Michael W. Huddleston, J. Stephen Gibson, Shannon Gracey Ratliff & Miller, Dallas, TX, Phillip R. King, Eric D. Stubenvoll, Darryl Durham, Jerome C. Studer, Meckler, Bulger & Tilson, LLP, Chicago, IL, Kirk C. Chamberlin, Chamberlin Keaster & Brockman LLP, Encino, CA, Nicholas R. Andrea, Lan Vu, Charleston Revich & Chamberlin, L.L.P., Los Angeles, CA, James N. Isbell, Thompson, Coe, Cousins & Irons L.L.P., Kenneth G. Engerrand, Brown Sims, P.C., Robin Howard Wexler, Houston, TX, Russell H. McMains, Law Offices of Russell H. McMains, Corpuys Christi, TX, for Petitioners.

Alexandra Giselle White, Brian D. Melton, Eric J. Mayer, Susman Godfrey LLP, Houston, TX, Ian B. Cosby, Susman Godrey LLP, Seattle WA, for Respondent.

D. Todd Smith, Austin, TX, Mary Olga Lovett, Greenberg Traurig LLP, Houston, TX, for Amici.

Chief Justice JEFFERSON delivered the opinion of the Court, in which Justice O'NEILL, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, Justice JOHNSON, and Justice WILLETT joined.

A wireless telephone manufacturer, sued in a number of putative class actions alleg-

ing that radiation emitted by the phones caused biological injury, turned to its insurers, who had agreed to defend claims seeking damages because of bodily injury. After initially providing a defense, the insurers later sought a declaration that they had no duty to do so. Because we conclude that most of the underlying suits seek damages because of bodily injury, we modify the court of appeals' judgment and, as modified, affirm.

# I

## Factual and Procedural Background

Nokia, Incorporated, a Texas corporation, is the world's largest manufacturer of wireless telephone handsets. Nokia and other wireless telephone manufacturers were sued in a number of putative class action cases filed in various courts across the country. The consumer-plaintiffs in those cases alleged that radio frequency radiation (RFR) from wireless phones causes "biological injury."

Nokia tendered the defense of one of these cases to Zurich American Insurance Company, from which it had purchased several commercial general liability (CGL) insurance policies covering the years 1985–89 and 1995–2000. Zurich agreed to defend Nokia but reserved its right to later contest its obligation to defend or indemnify. Nokia's other insurers, National Union Fire Insurance Company [1] and Federal Insurance Company,[2] followed suit.

Seeking to resolve the coverage issue, Zurich sued Nokia, National Union, and Federal in Dallas County and sought a declaration that Zurich had no duty to defend or indemnify Nokia and that Zurich was not responsible for defense or indemnity payments made by National Union or Federal. Zurich also sought contribution and subrogation against all defendants. National Union and Federal cross-claimed against Nokia asserting, among other things, that they had no duty to defend or indemnify Nokia.

The trial court granted the insurers' motion for summary judgment. After Nokia tendered new and amended complaints in the underlying actions, Zurich filed an amended motion for summary judgment. At issue in the various motions were the following five cases (the "MDL cases"):

1. *Pinney et al. v. Nokia, Inc., et al.,* 216 F.Supp.2d 474 (D.Md.2002), originally filed in the Circuit Court for Baltimore City, Maryland;

2. *Farina v. Nokia, Inc., et al.,* 216 F.Supp.2d 474 (D.Md.2002), originally filed in the Court of Common Pleas, Philadelphia County, Pennsylvania;

3. *Gilliam et al. v. Nokia, Inc., et al.,* 216 F.Supp.2d 474 (D.Md.2002), originally filed in the Supreme Court of the State of New York;

4. *Gimpelson et al. v. Nokia, Inc., et al.,* 216 F.Supp.2d 474 (D.Md.2002), originally filed in the Superior Court of Fulton County, State of Georgia; and

5. *Naquin et al. v. Nokia, Inc., et al.,* 216 F.Supp.2d 474 (D.Md.2002), originally filed in the Civil District Court, Parish of Orleans, State of Louisiana;[3]

---

1. National Union issued several commercial general liability insurance policies to Nokia, covering 1989–1993, as well as three umbrella policies for the period 1998–2001.

2. Federal issued two general liability policies to Nokia, covering the period from 1999–

2001, and six umbrella policies, covering 1995–2001.

3. The Judicial Panel on Multidistrict Litigation has transferred these cases to the District of Maryland for coordinated or consolidated pretrial proceedings. 28 U.S.C. § 1407; *In re Wireless Telephone Radio Frequency Emis-*

plus a sixth action, *Dahlgren v. Audiovox Commc'ns. Corp., et al.,* Case No. 02–0007884, in the Superior Court of the District of Columbia.

The trial court granted Zurich's amended motion for summary judgment and signed a judgment declaring, in pertinent part, that Zurich, National Union, and Federal[4] had no duty to defend or indemnify Nokia in the MDL cases or in *Dahlgren.* The court ordered that Nokia take nothing on its counterclaims for declaratory relief regarding the duty to defend, breach of contract, failure to make prompt payment, breach of the duty of good faith and fair dealing, and for violation of article 21.21 of the Texas Insurance Code. The trial court severed the adjudicated claims, and Nokia appealed.

The court of appeals reversed as to the MDL cases, holding that, because (1) the complaints alleged claims for "bodily injury" and sought "damages because of bodily injury"; and (2) the "business risk" exclusions did not apply, the insurers had a duty to defend Nokia. 202 S.W.3d 384, 392. As to *Dahlgren,* in which the plaintiffs had explicitly disclaimed personal injuries and sought only economic and related equitable relief, the court of appeals affirmed the trial court's judgment and held that the insurers had no duty to defend Nokia. *Id.* at 392–93. Finally, the court of appeals held that, in light of its

determination that the insurers had a duty to defend the MDL cases, the trial court's ruling that there was no duty to indemnify Nokia in those cases was premature. *Id.* at 393. Thus, the court of appeals reversed and remanded that portion of the trial court's judgment.[5] *Id.*

The insurers petitioned this Court for review, arguing that they had no duty to defend the MDL cases, as the complaints did not state claims for bodily injury or seek damages because of bodily injury.[6] We granted the petitions for review.[7] 51 Tex. Sup.Ct. J. 126 (Nov. 30, 2007).

## II

### Duty to Defend

 In exchange for premiums paid, CGL insurers typically promise to defend and indemnify their insureds for covered risks. "[T]he duty to defend is distinct from, and broader than, the duty to indemnify." 14 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 200:1 (3d ed. 2007) ("COUCH ON INSURANCE"). An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 310 (Tex.2006). Thus, an insurer may have a duty to defend but, eventually, no

---

*sions Prods. Liab. Litig.,* 170 F.Supp.2d 1356, 1358 (J.P.M.L.2001).

4. The parties stipulated that the trial court's ruling on Zurich's second motion for summary judgment would resolve the same issues as to National Union, Federal, and Nokia.

5. That same day, a different panel of the same court decided *Samsung Electronics America, Inc. v. Federal Insurance Co.,* 202 S.W.3d 372, 383–84 (Tex.App.–Dallas 2006, pet. granted) (recognizing a duty to defend *Farina, Pinney, Gilliam,* and *Gimpelson,* but not *Dahlgren* ).

6. Nokia did not petition this Court for review of that part of the court of appeals' judgment holding that the insurers had no duty to defend Nokia in the *Dahlgren* case. TEX.R.APP. P. 53.1. Thus, that issue is not before us.

7. The Complex Insurance Claims Litigation Association and CTIA—the Wireless Association® submitted amicus curiae briefs. TEX. R.APP. P. 11.

obligation to indemnify. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997).

■ In determining a duty to defend, we follow the eight-corners rule, also known as the complaint-allegation rule: "an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *GuideOne*, 197 S.W.3d at 308. Thus, "[e]ven if the allegations are groundless, false, or fraudulent the insurer is obligated to defend." 14 COUCH ON INSURANCE § 200:19. We resolve all doubts regarding the duty to defend in favor of the duty, *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002), and we construe the pleadings liberally, *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965) (citing George S. Golick, Annotation, *Liability Insurer—Duty to Defend*, 50 A.L.R.2D 458, 504 (1956)); *see also Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir.2008) (noting that "[t]he rule is very favorable to insureds because doubts are resolved in the insured's favor"). The duty to defend is not affected by facts ascertained before suit, developed in the course of litigation, or by the ultimate outcome of the suit. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex.1997); *see also* 14 COUCH ON INSURANCE § 200:19 (noting that duty to defend is unaffected by "what the parties know or believe the alleged facts to be, the outcome of the underlying case, or the merits of the claim"). If a complaint potentially includes a covered claim, the insurer must defend the entire suit. 14 COUCH ON INSURANCE § 200:1 ("Typically, even if only one claim in a complaint containing multiple claims could be covered, the insurer must defend the entire action and the insurer must demonstrate that all the claims of the suit fall outside the policy's coverage to avoid defending the insured.").

## III

### The Policies and the Pleadings

#### A

#### Bodily Injury

■ With this in mind, we turn to the policy language at issue here. The policies covered "all sums which [Nokia] shall become legally obligated to pay as damages because of ... bodily injury" caused by an occurrence during the policy period. Some of the Zurich policies define bodily injury, some do not. Of those that do, bodily injury is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."[8] But this circular definition[9] is not helpful in answering the ques-

---

**8.** This tracks the "bodily injury" definition contained in Section V of the standard CGL policy. 20 ERIC MILLS HOLMES, HOLMES' APPLEMAN ON INSURANCE § 129.2(C)(1) (2d ed.2002) (citing ISO Commercial General Liability Form CG 00020798, Copyright, Insurance Services Office, Inc., 1997). Some of the Federal and National Union policies contained a similar definition, and the insurers

agree that any variation in wording does not affect our analysis here.

**9.** One commentator suggests that no definition is necessary: "It seems axiomatic that when one says 'bodily injury' intended to mean 'bodily injury,' then no further explanation is needed or required. In other words, bodily injury says what it says and means

tion before us: have the MML cases [10] alleged bodily injury?

None of the complaints use the term "bodily injury"; all are phrased in terms of "biological injury" or "biological effects." Thus, we must determine whether biological injuries or effects qualify as bodily injury. We have held that purely emotional injuries are not "bodily injuries," *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex.1997), and the insurers urge that this rule precludes relief here. But we also concluded that " 'bodily injury' ... unambiguously requires an injury to the physical structure of the human body," *id.*, and the MDL cases certainly allege that.

Each of the original and amended MDL complaints contains allegations that essentially mirror those set forth in the *Gilliam* amended complaint:

> This class action seeks damages and declaratory relief on behalf of plaintiff and a class of persons who purchased or leased wireless handheld telephones ("WHHPs").... Through a common and uniform course of conduct, the defendants have manufactured, supplied, promoted, sold, leased and provided wireless service for WHHPs when they knew or should have known that their products generate and emit radio frequency radiation ("RFR") that causes an adverse cellular reaction and/or cellular dysfunction ("biological injury") through its adverse health effects on: calcium and ion distribution across the cell membrane; melatonin production; neurological function; DNA single and double strand breaks and chromosome damage; enzyme activities; cell stress and gene transcription; and the permeability of

the blood brain barrier (hereinafter collectively described as the "health risk" and/or the "biological effects"). Through a common and uniform course of conduct, the defendants, acting individually and collectively, failed to adequately disclose to the consuming public the fact that WHHPs emit RFR that causes biological injury and a risk to the users' health. The purpose of this action is to hold accountable and to obtain maximum legal and equitable relief from those corporations and entities that are responsible for producing and placing into the stream of commerce WHHPs which create a health risk to users by causing biological injury.

The lengthy complaints assert that the named plaintiffs were exposed to RFR from their phones and thus were subjected to "RFR's biological effects and the risk to human health arising therefrom" and then discuss numerous studies linking RFR to adverse health consequences, including changes in the brain, headaches, heating behind the ear, sleep problems, and production of high levels of "heat shock proteins." In addition, the *Gimpelson* and *Pinney* original complaints assert that the plaintiffs "sustained biological injuries," and all of the amended complaints allege that the plaintiffs "sustained repeated biological injuries and/or harm" and "did incur biological injury and/or harm as a result of using Defendants WHHPs."

The court of appeals, relying on dictionary definitions and similar cases from other jurisdictions, concluded that injury at the cellular level was sufficient to allege a bodily injury under the policies at issue here. 202 S.W.3d at 389–90; *Samsung,*

---

what it means—which is a simple statement of the plain meaning rule of judicial construction." 20 HOLMES' APPLEMAN ON INSURANCE § 129.2(C)(1)

**10.** Our analysis of the MDL cases in section III is limited to *Pinney, Farina, Gilliam,* and *Gimpelson. Naquin* is discussed separately in section IV.

202 S.W.3d at 379–80. The United States Court of Appeals for the Fourth Circuit, construing the *Pinney* complaint, reached the same conclusion, as did the Ninth Circuit, construing the *Gimpelson* amended complaint and others. *Voicestream Wireless Corp. v. Fed. Ins. Co.*, 112 Fed.Appx. 553, 555–56 (9th Cir.2004) (noting that "logic dictates that it is sufficient to allege injury to human cells. . . . The policy provisions do not explicitly *exclude* coverage for allegations of injury to human cells, and to construe cellular harm as insufficient would be to, in effect, read an additional exclusion into the policy"); *N. Ins. Co. v. Balt. Bus. Commc'ns., Inc.*, 68 Fed. Appx. 414, 419 (4th Cir.2003) (holding that, "in alleging that persons using cell phones without headsets suffer from the radiation emitted by such phones, the Complaint alleges a 'bodily injury' " and noting that "Maryland courts have uniformly held that bodily injuries include those that occur at the minute, cellular level"). Like those courts and the court below, we conclude that the biological injuries alleged by the plaintiffs potentially state a claim for bodily injuries under the policies, much like the subclinical injuries alleged by plaintiffs who have been exposed to asbestos. *See Guar. Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 245, 250 (5th Cir.2000) (concluding that "the subclinical tissue damage that results on inhalation of a toxic substance such as asbestos" triggered duty to defend and remanding for determination of whether pleadings alleged that exposure caused bodily injury, "even if the particular asbestos-related disease was not diagnosed until sometime after the policy expired"); 20 HOLMES' APPLEMAN ON INSURANCE 2D § 129.2(C)(1) ("Claimants injured from the exposure to asbestos are generally found to have sustained bodily injury on each inhalation of asbestos fibers" and "the rule is equally applicable to silicosis exposure and disease

cases, as well as other types of chemical exposures."); *see also* 15 COUCH ON INSURANCE § 220:26 (noting that "the inhalation of asbestos causes immediate tissue damage, although the effects of that damage do not immediately manifest themselves, and such tissue damage is a 'bodily injury' "). We, of course, express no opinion on the merits of the underlying claims.

## B

### Damages

■ Because the policies cover "damages because of bodily injury," we must also examine whether the plaintiffs seek damages here. The insurers assert that the plaintiffs seek headsets, not damages, removing their claims from coverage. Nokia responds that the plaintiffs seek damages including, but not limited to, headsets, and those damages are squarely covered by the policy. We agree with Nokia.

Once again, the complaint allegations are dispositive. In each of the MDL cases, the plaintiffs seek damages, not merely headsets. The amended complaints include the following allegations:

"This action is brought for monetary damages" (*Pinney, Gimpelson* )

"The purpose of this action is . . . to obtain maximum legal and equitable relief" (*Gimpelson, Farina, Gilliam, Pinney* )

"This class action seeks damages" (*Farina* and *Gilliam* )

Requests for "compensatory damages including but not limited to amounts necessary to purchase a WHHP headset" (*Pinney, Gilliam,* and *Gimpelson*); "compensatory damages consisting, among other things, of the cost of headsets" (*Farina* and *Gilliam* ); "actual damages of the plaintiffs and the classes and for all other relief, in an amount to

be proved at trial, including, but not limited to, the costs of purchasing headsets for the WHHPs" (*Gilliam*); "actual damages of the plaintiff and the Class and for all other relief, in an amount to be proved at trial, including, but not limited to, the costs of purchasing headsets for the WHHPs" (*Farina*).

The original complaints contain virtually identical requests. Additionally, each of the original and amended complaints seeks punitive damages.

While the complaints note that headsets would eliminate users' exposure to RFR, the plaintiffs do not disclaim damages in favor of headsets. The Fourth Circuit, construing the *Pinney* original complaint, held that the allegations stated a claim for damages:

> On the face of the Complaint, the *Pinney* plaintiffs are seeking unspecified compensatory damages flowing from their bodily injuries, *i.e.*, harm suffered from radiation. Baltimore Business could therefore be potentially liable to the *Pinney* plaintiffs for any and all compensatory damages recoverable under Maryland law, including damages for already existing bodily injuries.

*N. Ins. Co.*, 68 Fed.Appx. at 420.

The Ninth Circuit, considering the *Gimpelson* amended complaint (and unspecified others) also concluded that the complaints sought damages:

> The Defendant Insurers further argue that even if the underlying complaints allege present "bodily injury," the prayer for relief of the cost of a headset does not constitute a request for "damages because of bodily injury" because a headset would be inadequate relief for such injury. This argument is unpersuasive. First, the prayers for relief in the underlying actions do not solely ask for the cost of a headset, but rather "For compensatory damages *including but not limited to* amounts necessary to purchase a WHHP headset for each class member." (emphasis added). The *Gimpelson* Amended Complaint also seeks "maximum legal and equitable relief" for the alleged bodily injury, as well as punitive damages. Second, the policies themselves do not define the term "damages." To the extent that seeking damages, in part, in the form of a headset neither clearly falls within a policy provision, nor is clearly excluded by the text of the policy, the policies are ambiguous. As with "bodily injury," this ambiguity must be construed against the Defendant Insurers.

*Voicestream Wireless Corp.*, 112 Fed. Appx. at 556–57 (footnote omitted).

The court of appeals examined whether headsets qualified as damages under the policies and concluded that, because the policy definition did not expressly include or exclude the costs of a headset as "damages because of bodily injury," and because the headsets were sought "on account of" or "by reason of" the plaintiffs' exposure to RFR, headsets were included within the category of damages "because of bodily injury." 202 S.W.3d at 391. We need not decide, however, whether headsets qualify as damages, because although each of the complaints seeks compensation for the cost of headsets, they also assert that the plaintiffs have been injured and seek damages based on their physical exposure to radiation.[11] Thus, we agree with

---

**11.** For this reason, we disagree with the only case that has refused to recognize a duty to defend in these cases. A New York appellate court, in a three-sentence opinion, held that the "actions seek only economic damages measured by the cost of headphones that allegedly would block the allegedly dangerous radiation emitted by cell phones, and, while alleging the risk of physical harm, specifically disclaim seeking recovery for anything but the

the court of appeals' ultimate conclusion: the MDL cases seek damages.

## C

### "Because of"

The insurers also contend that, even if the MDL cases seek damages, those damages are not "because of" bodily injury. The complaint allegations are varied, but each includes at least one theory under which tort damages may be recovered. Every complaint alleges product liability, breach of implied warranty, and fraudulent concealment claims. Two of the four (*Gimpelson* and *Pinney*) assert negligence and civil conspiracy counts, and three (*Pinney, Farina*, and *Gilliam*) allege violations of the Maryland, Pennsylvania, and New York consumer protection acts, respectively. The amended complaints add battery claims. "[W]e have said that the label attached to the cause of action—whether it be tort, contract, or warranty—does not determine the duty to defend." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex. 2007); *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997); *see also* 14 COUCH ON INSURANCE § 200:19 ("It is the factual allegations instead of the legal theories alleged which determine the existence of a duty to defend."). Thus, in a case in which a plaintiff sought recovery on negligence theories, we held there was no duty to defend because, despite the negligence labels attached to the claims, the plaintiff had "alleged facts indicating that the origin of his damages was intentional behavior" and "made no factual contention that could constitute negligent be-

havior by [the defendant]." *Farmers*, 955 S.W.2d at 83.

But the factual allegations here support a duty. The pleadings allege both intentional conduct (Nokia knew of RFR's harmful effects and nonetheless intentionally sold its products to consumers) and negligence (Nokia should have known of RFR's harmful effects). The insurers argue that the intentional tort allegations defeat the duty to defend. Standing in isolation, they might. *Lamar Homes*, 242 S.W.3d at 8 ("We have further said that an intentional tort is not an accident and thus not an occurrence regardless of whether the effect was unintended or unexpected."). *But see King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 189, 193 (Tex.2002) (noting that assault and battery exclusions would be unnecessary if such acts were not "occurrences"); *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 155–56 (Tex. 1999). We cannot, however, ignore the plaintiffs' other allegations when determining that duty. *See* 22 HOLMES' APPLEMAN ON INSURANCE 2D § 136.2(D) (noting that, "when there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy coverage").

The putative class members include two or three groups (depending on which complaint is involved), one of which consists of future purchasers,[12] and the insurers contend that this negates the duty to defend, as it is impossible for future purchasers to have suffered damages due to bodily injury. This misconstrues the nature of the duty, however. The duty to defend is not negated by the inclusion of

cost of the headphones." *Zurich–Am. Ins. Co. v. Audiovox Corp.*, 294 A.D.2d 194, 741 N.Y.S.2d 692, 692 (2002).

12. The other two are WHHP purchasers or lessees and those WHHP purchasers or lessees who purchased or leased WHHPs for use primarily by their minor children.

claims that are not covered; rather, it is triggered by the inclusion of claims that might be covered. *Id.* § 136.4(B) (noting that "[t]o excuse the duty to defend, the complaint must unambiguously *exclude* coverage under the policy") (emphasis added). Because past purchasers are alleged to have suffered bodily injury and because they seek damages for those injuries already incurred, the suits fall within the policy language—even if the case also involves claims by those who have not yet purchased wireless telephones. Over-inclusive allegations do not negate the duty to defend; the duty applies if there is a possibility that *any* of the claims might be covered.

## D

### Class Allegations

■■■ Two of the MDL cases (*Gimpelson* and *Pinney*) assert that "no individual issues of injury exist, let alone predominate in this case, because membership in each class is premised only upon purchase or lease of a WHHP without a headset," and the insurers contend this statement disclaims damages for bodily injury. Alleging that there are no individual *issues* of injury, however, is not the same as stating that no individuals have been injured. In fact, each of the complaints quite clearly alleges the opposite, as outlined above. Nor is it dispositive that the proposed class includes only those purchasers who have not been diagnosed "with a brain related tumor or cancer of the eye." Excluding certain classes of injured purchasers does not mean that the

putative class has abandoned all claims for damages because of bodily injuries. Although we have held that a "class action will rarely be an appropriate device for resolving" a personal injury claim, *Sw. Refining Co., Inc. v. Bernal,* 22 S.W.3d 425, 436 (Tex.2000), the appropriateness of class certification is not at issue here and is not relevant to the duty to defend. *See Hartford Accident & Indem. Co. v. Beaver,* 466 F.3d 1289, 1295–96 (11th Cir.2006) (finding a duty to defend putative class action under Florida law and noting that "[i]f the duty to defend arises in spite of the uncertainty and impracticality of defending wholly meritless individual claims, we think it equally clear that the duty to defend is not defeated by some uncertainty as to the merits of a class certification" and "[t]he likelihood that a plaintiff will prevail in its covered claims or that a class will be certified does not enter into the calculus"). The question is whether the MDL complaints seek damages because of bodily injury, and we conclude that they do.

None of the MDL cases was filed in Texas, and none will be tried in Texas. The complaints allege violations of Maryland, Pennsylvania, New York, and Georgia law, respectively. Whether a class will be certified is ultimately a question for the MDL court, not us.[13] Every court that has analyzed in any detail the duty to defend the identical claims in these very cases—including the two federal circuit courts that have reached the issue—has held that such a duty exists.[14] We have

---

**13.** According to Nokia, *Pinney, Gimpelson, Gilliam,* and *Naquin* have been voluntarily dismissed (without prejudice) by the plaintiffs, with no class being certified and without any settlement monies being paid.

**14.** *See Voicestream Wireless Corp. v. Fed. Ins. Co.,* 112 Fed.Appx. 553, 557 (9th Cir.2004);

*N. Ins. Co. v. Balt. Bus. Commc'ns., Inc.,* 68 Fed.Appx. 414, 422 n. 11 (4th Cir.2003); *Ericsson, Inc. v. St. Paul Fire and Marine Ins. Co.,* 423 F.Supp.2d 587 (N.D.Tex.2006); *Motorola, Inc. v. Associated Indem. Corp.,* 878 So.2d 824, 837 (La.Ct.App.2004), *writ denied,* 888 So.2d 207 (La.2004); *writ denied* 888 So.2d 211 (La.2004); and *writ denied* 888

repeatedly stressed the importance of uniformity "when identical insurance provisions will necessarily be interpreted in various jurisdictions." *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 824 (Tex. 1997); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 522 (Tex. 1995). Failing to recognize the duty here would mean that Nokia and Samsung—two Texas corporations (as well as any other manufacturer sued by its insurer in a Texas court)—would be deprived of a defense to which parties in other jurisdictions are entitled. We conclude that the MDL cases seek damages because of bodily injury.

## E

### Eight–Corners Rule

The insurers urge us to consider extrinsic evidence in determining whether they must defend Nokia. Specifically, they assert that the *Pinney* plaintiffs filed briefs in the MDL indicating that their claims were not for bodily injury but solely for economic damages. The Fourth Circuit, applying Maryland law, declined to consider this evidence and gave two reasons for its decision. *N. Ins.*, 68 Fed.Appx. at 421. First, the court noted that legal memoranda, unlike pleadings or affidavits, could not generally be used in another case as an evidentiary admission of a party. *Id.* at 421. Second, even if the memorandum were binding, the court noted that it would be obliged to read the document as a whole and, while some statements disclaimed bodily injury damages, others indicated that the *Pinney* plaintiffs were nonetheless seeking relief designed to address an already existing bodily injury. *Id.* at 422

(resolving the duty to defend in favor of the insured because "[e]xamined as a whole, the Memorandum fails to eliminate the potentiality that Baltimore Business could be liable to the *Pinney* plaintiffs for damages as a result of bodily injury").

To these reasons, we add a third: while Maryland has recognized exceptions, in some limited circumstances, to the eight-corners rule, Texas has not. In *GuideOne Elite Insurance Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308–09 (Tex. 2006), we declined to recognize an exception to the eight-corners rule for "overlapping" evidence that implicated both coverage and the merits of the claim. There, the insurance company argued that extrinsic evidence conclusively proved that the alleged wrongdoer was not a church employee at the time of the wrongdoing (thereby eliminating coverage under the church's insurance policy), despite the plaintiff's allegations that he was. *Id.* at 308. We noted that some courts have recognized exceptions to the eight-corners rule and that the Fifth Circuit had opined that, were we to recognize such an exception, we would likely do so " 'when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.' " *GuideOne*, 197 S.W.3d at 309 (quoting *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir.2004) (describing case in which factual allegations "were not specific enough, even interpreted in the light most favorable to the insured, to possibly bring

So.2d 212 (La.2004). *But see Zurich–Am. Ins. Co. v. Audiovox Corp.*, 294 A.D.2d 194, 741 N.Y.S.2d 692, 692 (N.Y.App.Div.2002) (concluding, in a three-sentence opinion, that the "actions seek only economic damages measured by the cost of headphones that allegedly

would block the allegedly dangerous radiation emitted by cell phones, and, while alleging the risk of physical harm, specifically disclaim seeking recovery for anything but the cost of the headphones").

the claim within the negligence coverage of the policy" so that extrinsic evidence going solely to coverage could be examined)). Nokia urges that the *Pinney* statements, made in response to a motion to dismiss, go to the merits of the case and thus could not be considered under this exception. We need not reach this issue, however, because here it is not "initially impossible to determine whether coverage is potentially implicated"—it is. *Id.* As set forth above, the MDL cases allege damages because of bodily injury. Thus, even if we were to recognize this exception to the eight-corners rule, this case would not fit within its parameters. Accordingly, we decline to do so.

## IV

### *Naquin*

*Naquin*, however, presents a closer question. The original *Naquin* complaint, filed May 26, 2000 in Louisiana state court, potentially stated a claim for bodily injury and sought damages because of the alleged injuries. The putative class consisted of "all owners of cellular phones manufactured and/or distributed by any of the defendants." The complaint alleged that the phones "expose[d] plaintiffs to risk of damage and injury to their health and well being" and "potentially very significant long term health problems" due to transmissions "which direct[ed] potentially damaging transmission waves directly into the user's ear and brain." The complaint asserted that users had to purchase headsets or "risk extreme adverse long term health care consequences" including, but not limited to, "anticipated anxiety, fear of brain damage and/or cancer." Plaintiffs asserted product liability, breach of warranty,

misrepresentation, unfair trade practice, and redhibition [15] claims, and they sought, among other things, damages in "an amount sufficient" to purchase a headset, pay for the costs of medical monitoring, and compensate users for emotional distress.

After the case was transferred to the MDL, the *Naquin* plaintiffs amended their complaint, deleting "all claims under the Louisiana Unfair Trade Practices Laws, all claims for medical monitoring, all claims for emotional distress, pain and suffering, and ... all claims for any individualized physical injury." The complaint, however, retained a product liability claim and still sought "funds" based on the allegations therein. Moreover, the complaint still complained of bodily injury, with allegations of "nerve damage, cellular damage, cellular dysfunction and/or other injury to humans," including interference with "calcium and ion distributions, melatonin production, neurological effects, DNA single and double strand breaks and chromosome damage, enzyme activities, cell stress and gene transcription, and interference with function of the blood brain barrier." Although the plaintiffs disclaimed recovery for individualized physical injury, the allegations included claims of classwide harm, including claims that the WHHPs "emit unseen RFR which enters the users' brain through the location of the antenna proximate to the users' bones, skull, head and brain exposing plaintiffs and all users to ... injury to their health and well-being and unexpected changes in their physiology." Under our duty-to-defend law, because the amended complaint potentially stated a claim seeking damages because of

---

**15.** Redhibition is a civil law claim defined as "[t]he voidance of a sale as the result of an action brought on account of some defect in a thing sold, on grounds that the defect renders the thing either useless or so imperfect that the buyer would not have originally purchased it." BLACK'S LAW DICTIONARY 1304 (8th ed.2004).

bodily injury, the insurers still had a duty to defend the case.

The second amended complaint, however, changed that. While many of the allegations remained the same, the plaintiffs amended paragraph VI to read:

> All of the allegations of plaintiffs original Petition and Amended Complaint make claim solely in redhibition, and breach of warranty and under the Magnuson–Moss Warranty Improvement Act; 15 U.S.C. 35 et seq. All allegations which set forth or identify lack of warnings and other wrongs describe factual conduct but do not set forth claims. Plaintiffs do not make a products liability claim. The legal claims in the First Supplemental and Amending Complaint are solely those based upon redhibition, breach of warranty and the Magnuson–Moss Act.

We must decide whether this disclaimer precludes a duty to defend here. By deleting the product liability claims and asserting only Magnuson–Moss claims and Louisiana redhibition and breach of warranty claims—none of which permit recovery of personal-injury damages [16]—and by clarifying that the remaining allegations summarize the facts but do not set forth claims, the second amended complaint unambiguously excludes coverage under the policies. 22 Holmes' Appleman on Insurance 2d § 136.4(B). While the complaint is not a model of precision (*e.g.*, it asserts claims for fraud by concealment and civil conspiracy despite this initial disclaimer), plaintiffs have clearly alleged that their claims sound only in redhibition, breach of warranty, and under the Magnuson–Moss Act.

We recognize that "damages because of bodily injury" is susceptible to a broad definition. At least one court of appeals has concluded that the phrase is ambiguous: "One interpretation suggests that the insured is entitled to recover any damages that arise *because of bodily injury;* another suggests that the insured is only entitled to recover damages that are *derived from the bodily injury.*" *State Farm Mut. Auto. Ins. Co. v. Shaffer,* 888 S.W.2d 146, 148–49 (Tex.App.–Houston [1st Dist.] 1994, writ denied). We recently held that prejudgment interest was recoverable under an insurance policy requiring the insurer to pay all sums the insured was legally entitled to recover "because of bodily injury or property damage." *Brainard v. Trinity Universal Ins. Co.,* 216 S.W.3d 809, 814 (Tex.2006). We rejected the insurer's argument that prejudgment interest was compensation for lost use of money, not damages from bodily injury, and noted that such a "rigid reading ... would entail splitting hairs even among purely compensatory damages, such as those for mental anguish and loss of society." *Id.* Instead, we noted that the phrase merely underscored the fact that the insurance was compensatory, and we concluded that "while it is true that prejudgment interest accrues over time because of lost use of money, it is equally accurate to say that it constitutes additional compensatory dam-

---

**16.** The Magnuson–Moss Warranty Act expressly excludes claims for personal injuries, subject to three exceptions not relevant here. 15 U.S.C. § 2311(b)(2). The Louisiana Products Liability Act provides the exclusive means of recovery for bodily injury claims, while common law redhibition and breach of warranty claims remain available for economic loss. John Kennedy, *A Primer on the Loui-* *siana Products Liability Act,* 49 La. L.Rev. 565, 580 (1989); *Jefferson v. Lead Indus. Ass'n, Inc.,* 930 F.Supp. 241, 245 (E.D.La.1997) (noting that "breach of implied warranty or redhibition is not available as a theory of recovery for personal injury, although a redhibition action is still viable against the manufacturer to recover pecuniary loss"), *aff'd,* 106 F.3d 1245 (5th Cir.1997).

ages for the insured's bodily injury and property damage." *Id.*

■ But even assuming that the *Naquin* plaintiffs' redhibition, Magnuson–Moss, and warranty claims seek damages "because of bodily injury," the policies exclude coverage for these claims because the only damages sought are economic ones relating to the allegedly defective product. The policies' business risk exclusions,[17] while inapplicable to personal injury claims, preclude coverage for economic loss claims based on product defects:

> Coverage under a commercial general liability insurance policy is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or work is not that for which the damaged person bargained. Pursuant to this understanding, certain exclusions have been included within the standard commercial general liability policy for the express purpose of excluding coverage for risks relating to the repair or replacement of the insured's faulty work or products, or defects in the insured's work or product itself. These "business risk" exclusions, as they are commonly called, are intended to provide coverage for tort liability, not for the contractual liability of the insured for loss which takes place due to the fact that the product or completed work was not that for which the other party had bargained.

9A COUCH ON INSURANCE § 129:16; *see also T.C. Bateson Constr. Co. v. Lumbermens*

*Mut. Cas. Co.,* 784 S.W.2d 692, 694–95 (Tex.App.–Houston [14th Dist.] 1989, writ denied) ("The purpose of comprehensive liability insurance coverage is to provide protection to the insured for personal injury or for property damage caused by the completed product but not for the replacement and repair of that product."), *La Marche v. Shelby Mut. Ins. Co.,* 390 So.2d 325, 326 (Fla.1980) (noting that "[t]he majority view holds that the purpose of this comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product"); *W. Cas. & Sur. Co. v. Brochu,* 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872, 878 (1985) (noting that " 'the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident' ") (quoting *Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 405 A.2d 788, 796 (1979)). Here, the disclaimer makes clear that the only injury complained of is a warranty-based economic loss asserted under Louisiana and federal law, and those claims are excluded from coverage. Thus, the duty to defend *Naquin* ended when the plaintiffs filed the second amended complaint.[18] 22 HOLMES' APPLEMAN ON INSURANCE § 136.2(D) ("[W]hen there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy

---

17. The relevant exclusions preclude coverage for " 'property damage' to 'your product' arising out of it or any part of it," "property damage to the named insured's products arising out of such products or any part of such products," and "property damage ... arising out of ... [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.' "

18. The insurers urge us to consider extrinsic evidence in determining the duty to defend. Specifically, they assert that statements made by attorneys for the *Naquin* plaintiffs in response to a motion to dismiss should be considered in determining whether there is a duty to defend. For the reasons set forth in section III, we decline to do so.

coverage.").[19]

## V

## Exclusions

 Those exclusions do not, however, preclude a duty to defend in the remaining cases. The relevant exclusions apply to "property damage to your product," "property damage ... arising out of a defect, deficiency, inadequacy or dangerous condition in 'your product,'" and damages related to a product recall. We agree with the court of appeals, which held that these exclusions did not excuse the duty to defend: "[t]he underlying actions did not contain allegations of property damage to the cell phones or to 'impaired property' (defined as 'tangible property, other than your product or your work') or damages for the recall of the cell phones." 202 S.W.3d 384, 392. Our holding is in accord with other cases that have discussed the issue. *Voicestream*, 112 Fed.Appx. at 557 (holding that property damage exclusions did not apply "because the underlying complaints—liberally construed—allege bodily injury, not that the underlying plaintiffs' cell phones do not work for their intended purpose (i.e., making and receiving phone calls)"); *N. Ins. Co.*, 68 Fed. Appx. at 422 n. 11 (noting that three exclusions were inapplicable because they related to property damage, rather than bodily injury, and the fourth involved only products that had been recalled, unlike the wireless phones at issue); *Motorola, Inc.*, 878 So.2d at 836 (concluding that "these exclusions relate only to loss of use or damage to property, including the cell phones at issue, and thus have no relevance to the 'bodily injury' claims at issue").

## VI

## Conclusion

As the Fourth Circuit concluded, the "plaintiffs are seeking remedies designed to eliminate already existing bodily injuries. While their claims may lack merit, we are unable to state with certainty that they do not seek 'damages because of bodily injury.'" *N. Ins. Co.*, 68 Fed.Appx. at 421–22. Neither can we. We modify the court of appeals' judgment to provide that the duty to defend *Naquin* ended upon the filing of the second amended complaint and, as modified, affirm. TEX.R.APP. P. 60.2(b).

Justice HECHT delivered a dissenting opinion, in which Justice BRISTER joined.

---

**19.** We note too that this appears to be the first case to consider the *Naquin* second amended complaint. While the record copy of that complaint is undated, it appears to have been filed after the Louisiana court of appeals held that, under Louisiana law, there was a duty to defend *Naquin*. *Motorola, Inc. v. Associated Indem. Corp.*, 878 So.2d 824, 830 n. 5 (La.Ct. App.2004) (citing only the allegations of the original and first amended complaints and noting that the "allegations are characteristic of delictual or 'mixed' causes of action such as products liability actions," claims that were dropped from the second amended complaint), *writ denied*, 888 So.2d 206 (La.2004); *writ denied* 888 So.2d 211 (La.2004); and *writ denied* 888 So.2d 212 (La.2004). Similarly, the Fourth Circuit's decision was limited to the *Pinney* complaint, and the Ninth Circuit considered *Gimpelson* and unspecified other complaints with the same allegations, which suggests that the *Naquin* second amended complaint may not have been among them. *Voicestream*, 112 Fed.Appx. at 555 n. 1 ("All of the underlying complaints, however, are substantially the same, and the parties do not contend otherwise."); *N. Ins. Co.*, 68 Fed. Appx. at 416. *But see Ericsson, Inc. v. St. Paul Fire and Marine Ins. Co.*, 423 F.Supp.2d 587, 590 (N.D.Tex.2006) (noting parenthetically that *Naquin* complaint had been amended a second time but failing to discuss specifics of the amendment, including disclaimer).

Justice HECHT, joined by Justice BRISTER, dissenting.

When construing pleadings under the eight-corners rule to determine whether they state a claim an insurer must defend, we are to be liberal.[1] Liberal does not mean naïve; it does not mean blind. The pleadings in the five putative class actions at issue here all allege that cellphone radiation causes bodily injury, although they never use that phrase. They call it "biological injury". Since the human body is totally biological[2] (as opposed to a human *being*), the two phrases would seem to mean the same thing.[3] But American caselaw rarely refers to injuries to the human body as "biological injuries". Westlaw's computer databases identify maybe half a dozen such cases in the history of American jurisprudence, not counting the cases before us and a few others like them. Westlaw quits counting cases using the phrase "bodily injury" at 10,000. A pervasive, timeless consensus has formed around the use of "bodily injury". Why, then, all of a sudden, change to "biological injury" in pleading a handful of cellphone radiation cases?

There is an obvious answer. The cases are putative class actions. None of the named plaintiffs claims damages for personal injuries caused by cellphone radiation. Their damage claims are for not having been furnished headsets with their phones, at most a few dollars, certainly not worth the freight of the litigation. None of the cases has any value unless a class is certified aggregating millions of claims for headsets. A class cannot be certified if questions common to the class members do not predominate.[4] Questions common to class members cannot predominate if class members claim individualized bodily injuries.[5] If the cases are to have any value, the pleadings must never breathe the words "bodily injury". They never do.

Nokia's insurers argue that this omission establishes that they have no duty to defend the claims, but it doesn't. The insurance policies obligate them to defend claims for "damages because of bodily injury", and "biological injury" is close enough. But the insurers also argue that none of the damages sought are *because of* bodily injury, and on this point they are clearly right. None of the class action

---

1. *National Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997) ("When applying the eight corners rule, we give the allegations in the petition a liberal interpretation.").

2. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 218 (1981) (defining biological as "of or relating to biology or to life and living things: belonging to or characteristic of the processes of life").

3. The law does not afford damages for all bodily injuries. *See, e.g., Metro–North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 432–436, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997) (holding that a worker cannot recover under FELA for the injury of exposure to asbestos if he is disease and symptom free); *Temple–Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 92–93 (Tex.1999) (holding that a person exposed to asbestos cannot claim mental anguish damages for fear of contracting an

asbestos-related disease if bodily injury is "latent and any eventual consequences uncertain"). The issue here, however, is not whether cellphone purchasers have actually suffered bodily injury, but whether class counsel have alleged they have.

4. *E.g.,* FED.R.CIV.P. 23(b)(3); TEX.R. CIV. P. 42(b)(3).

5. *Southwestern Refining Co., Inc. v. Bernal*, 22 S.W.3d 425, 436 (Tex.2000) ("Personal injury claims will often present thorny causation and damage issues with highly individualistic variables that a court or jury must individually resolve. *See generally [Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)]. Thus, the class action will rarely be an appropriate device for resolving them.").

pleadings claims any specific damages other than for headsets that Nokia did not supply with the phones. Want of a cellphone headset is neither a bodily nor a biological injury. It is true, as the Court notes, that several of the damage claims are not specific—the pleadings claim unspecified "monetary damages", "compensatory damages", "actual damages", "legal and equitable relief", etc.—but none is inconsistent with the pleadings' meticulous avoidance of any claims for personal injuries. It is also true that the pleadings weasel that class members' damages are "including but not limited to", and "consisting, among other things, of" headsets and their value, but again, though the pleadings do not affirmatively exclude the possibility of other damages, neither do they ever identify any other actual damages. The Court makes the positive statement that the class action plaintiffs "seek damages based on their physical exposure to radiation." [6] This is simply incorrect. There are claims for headsets and their value, and claims for other unspecified damages. There are no claims for personal injury damages. The Court cites no example, and there is none.

Construing pleadings liberally, we must consider whether they state *potential* claims for damages because of bodily injury, even if they are ambiguous or inartful.[7] Under this very generous standard, the pleadings before us here do not. Suppose that a plaintiff sued the manufacturer of his car, alleging that its brakes were defectively designed and unreasonably dangerous, and claiming damages required for repairs. That would clearly not be a claim for damages because of bodily injury. If the plaintiff added that brakes had been

known to fail, resulting in accidents, would that transform the case into one for bodily injury damages? Surely not. If the plaintiff asserted that he had himself been injured, but still claimed only repair damages, would that change the nature of the case? No. That is all we have in the present case. Class counsel allege very carefully that using cellphones without headsets can cause bodily injury, and therefore they want headsets or their value. This is not a claim for damages because of bodily injury.

This conclusion is unassailable for two reasons. One is that a person need only have purchased (or leased) a cellphone to be a member of the class claiming damages. He need not ever have actually used the phone. He could have bought it as a gift or lost it. His damages are completely unrelated to any possible personal injury, bodily or biological. He is like the plaintiff suing for defective brakes before an accident has happened. The other reason is that, as I have already said, damages because of bodily injury necessarily depend on whose body in particular has been injured, an individual inquiry that prevents predominance of common issues, precludes class certification, and destroys the value of the lawsuits. We should not consider that class counsel's pleadings potentially state a claim that would destroy the case altogether.

In any event, class counsel have removed all doubt as to their intentions. Several complaints assert: "No individual issues of injury exist". This can be true only if class members do not claim personal injuries. The Court's response to this statement is that "[a]lleging that there are

---

**6.** *Ante* at 494.

**7.** *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 310 (Tex.2006)

("A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend...").

no individual *issues* of injury ... is not the same as stating that no individuals have been injured."[8] That is certainly true, but the insurers' duty to defend turns not on whether individuals may have been injured, but whether they *claim* injury. The insurers must defend claims for damages because of bodily injury, even if the claims prove to be unfounded; by the same token, they are not required to defend claims that have not been asserted, even if they exist somewhere. Class counsel stated in the MDL proceeding: "Plaintiffs are not seeking compensation for any personal injury suffered as a result of the use of cell phones." The Court's response is that class certification is not the issue.[9] That, too, is true. But surely we must take counsel at their word as to what their claims are.

The Court cites an unpublished opinion of the Fourth Circuit and an unpublished opinion of the Ninth Circuit, each concluding that the cellphone radiation plaintiffs claim damages because of bodily injury. But neither adds anything to this Court's opinion. Specifically, neither quotes a single example of such a claim from class counsel's pleadings. Moreover, the courts

that issued those opinions do not allow them to be treated as authoritative in any federal court in their respective circuits.[10] If the opinions are not binding even on their authors, it is not clear why this Court should rely on them for anything. The Court suggests that our decision on the insurers' duty to defend should not be out of step with other courts that have addressed the same issue, but courts have gone both ways.[11] We cannot help but be in step with some and out of step with others.

The most unfortunate aspect of today's decision in my view is that it handles the eight-corners rule in a way that rewards cute and clever pleading that strains credulity. The only difference between the five cases at issue is that in one, *Naquin*, class counsel was forthcoming, affirmatively disclaiming the personal injury damage claims that would destroy the lawsuit.[12] The Court concludes that the insurers need not defend that case.

The pleadings in the cellphone radiation class actions do not actually claim damages because of bodily injury, and they do not potentially include such claims because the

---

8. *Ante* at 496.

9. *Ante* at 496.

10. 4th Cir. Local R. 32.1 (citation of unpublished dispositions) ("Citation of this Court's unpublished dispositions issued prior to January 1, 2007, in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case."); 9th Cir. R. 36–3(a) (citation of unpublished dispositions or orders) ("*Not Precedent:* Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").

11. *Compare Zurich–American Ins. Co. v. Audiovox Corp.*, 294 A.D.2d 194, 741 N.Y.S.2d 692, 692 (N.Y.App.Div.2002) (no duty to defend), *with Ericsson, Inc. v. St. Paul Fire and Marine Ins. Co.*, 423 F.Supp.2d 587, 594 (N.D.Tex.2006) (duty to defend), *Motorola, Inc. v. Associated Indem. Corp.*, 878 So.2d 824 (La.App. 1 Cir.2004), *writ denied*, 888 So.2d 206 (La.2004), *and writ denied*, 888 So.2d 211 (La.2004), *and writ denied*, 888 So.2d 212 (La.2004) (duty to defend), *and Motorola, Inc. v. Associated Indem. Corp.*, 878 So.2d 838 (La.App. 1 Cir.2004), *writ denied*, 888 So.2d 206 (La.2004), *and writ denied*, 888 So.2d 211 (La.2004), *and writ denied*, 888 So.2d 212 (La.2004) (duty to defend).

12. *Naquin et al. v. Nokia Mobile Phones, Inc.*, MDL No. 1421, No. 01–MD–1421 (D.Md.) (second amended complaint) (E.D.La. Cause No. 00–2023).

claims would defeat the actions. The insurers should not be required to defend them.

Accordingly, I respectfully dissent.