ORLANDO L. GARCIA, Chief United States District Judge
On this day, the Court considered the status of the above-captioned litigation, including Mt. Hawley's Motion for Certification of Appeal (docket no. 24) and Mt. Hawley's Motion for Reconsideration *796 (docket no. 34) (collectively, the "Pending Motions").
The present case concerns a coverage dispute between a general contractor, Defendant Slay Engineering, Texas Multi-Chem, Huser Construction LLC (the "Huser") and Defendant Huser Construction Co., Inc. ("Huser Construction", and together with Huser, "Defendants"),[1] and Defendants' insurer, Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"). The Pending Motions were filed following this Court's August 15, 2018 Memorandum Opinion and Order (docket no. 19) (the "Prior Order"), in which the Court denied Mt. Hawley's Motion for Summary Judgment (docket no. 13) and granted Huser's partial Motion for Summary Judgment as to the Duty to Defend (docket no. 11). Specifically, the Prior Order found that Mt. Hawley had a duty to defend Huser in state court litigation between the City of Jourdanton, Texas (the "City") and Defendants regarding alleged defects with a municipal construction project. See City of Jourdanton v. Slay Engineering / Texas Multi-Chem / Huser Construction, LLC and North American Specialty Ins. Co. , No. 17-12-1181-CVA (81st Judicial District Court of Atascosa County, Texas) (hereinafter, the "Underlying Suit").
As this action was progressing before this Court, the parties were also proceeding with similar parallel litigation in the United States District Court for the Southern District of Texas.[2] See Mt. Hawley Ins. Co. v. Huser Constr. Co., Inc. , No. 4:18-cv-00787 (S.D. Tex., filed Mar. 13, 2018) (the "Southern District Litigation").[3] Although the two disputes involved different construction projects, both this case and the Southern District Litigation involve the interpretation of identical coverage exclusions, exceptions and/or endorsements from coverage contracts between Mt. Hawley and Defendants. Compare docket nos. 54-3, 54-4, 54-5 & 54-6 (collectively, the "Policies") with S.D. docket no. 1-2. In particular, all Policies contain a "your work" exclusion, an exception to that exclusion for work performed by subcontractors, and a separate endorsement containing a breach of contract exclusion.[4] In particular, the endorsement containing the Breach of Contract Exclusion specifies, in relevant part, that coverage does not extend to "any claim or 'suit' for ... 'property damage'... arising directly or indirectly out of... [b]reach of express or implied *797 contract [or] breach of express or implied warranty." See, e.g. , docket no. 54-3 p. 52. In both this case and the Southern District Litigation, the district court was asked to determine whether-in light of the Policies' language-the allegations in the respective state court lawsuit require Mt. Hawley to defend and/or indemnify Huser and/or Huser Construction in the underlying state court litigation.
In this case, and with respect to Defendants' construction project in Jourdanton, Texas, this Court's Prior Order recognized that the issue was a close call, and the Court recognized that Mt. Hawley may ultimately have no duty to indemnify Defendants. See docket no. 19 pp. 13 & 17-19. However, the Court found the exact scope of Mt. Hawley's Breach of Contract Exclusion to be ambiguous, and after applying the relevant rules of insurance policy interpretation under Texas law, the Court concluded that the Breach of Contract Exclusion did not exclude coverage for property damage caused solely by defective work of one of Huser's subcontractors. Therefore, the Court found that the allegations in the Underlying Suit "potentially support[ed] a covered claim" under the Policies.[5] See docket no. 19 p. 17 (citing Zurich Am. Ins. Co. v. Nokia, Inc. , 268 S.W. 3d 487, 490 (2008) ). Thus, under Texas law, the Court concluded that Mt. Hawley had a duty to defend Huser in the entirety of the Underlying Suit. Id. Following entry of the Prior Order, Mt. Hawley moved for reconsideration of the Court's determination. See docket no. 34.
On March 19, 2019, United States District Judge Sim Lake issued an order in the Southern District Litigation. See docket no. 57-1 (the "Southern District Order"). The Southern District Order held that the Breach of Contract Exclusion in the Mt. Hawley-Huser Construction contract meant that Mt. Hawley had no duty to defend Huser Construction with respect to the underlying litigation in that case involving a Huser Construction project in Pleasanton, Texas. See ids="8197533" index="2" url="https://cite.case.law/sw3d/268/487/#p490">id. Specifically, the Southern District Order noted that an endorsement controls over conflicting policy language, and, after finding the Breach of Contract Exclusion to be unambiguous, held that the Breach of Contract Exclusion relieves Mt. Hawley of its duty to provide coverage for the contract-related damage caused by Huser Construction's subcontractors' allegedly defective work at that site. See id. at p. 19. Consistent with its finding, that court entered Judgment for Mt. Hawley. See docket no. 20. Huser Construction filed a motion to amend the Southern District Order, which was denied. See S.D. docket nos. 21, 22 & 23. On May 24, 2019, Huser Construction filed its Notice of Appeal of the Southern District Order. See S.D. docket no. 24.
Having reviewed the Southern District Order and the parties' briefing in this case, the Court will address the merits of Mt. Hawley's Motion for Reconsideration.[6]
DISCUSSION
Mt. Hawley seeks reconsideration of this Court's determination that Mt. Hawley has *798 a duty to defend Defendants with respect to the claims asserted in the Underlying Suit. See docket no. 34. Mt. Hawley reiterates several of the arguments it made previously and also asserts new arguments that were not made in the parties' original briefing. In addition, Mt. Hawley directs the Court to the Southern District Order, in which at least some of Mt. Hawley's arguments were adopted. See docket no. 57.
As an initial matter, the Court notes that the underlying state court allegations against Defendants in the two litigations are not identical, and thus, the duty to defend conclusions from this Court's Prior Order and the Southern District Order are not necessarily inconsistent. However, it does appear that the Prior Order and the Southern District Order arrived at inconsistent determinations as to the scope of the Breach of Contract Exclusion contained in the Policies. For example, this Court found that there was ambiguity as to the scope of the Breach of Contract Exclusion, and the Court-as required by Texas law-resolved such ambiguity (i) in favor of the insured, rather than the insurer, and (ii) in a way that gave meaning to other language in the Policies. See docket no. 19 pp. 15-17. On the other hand, the Southern District Order found the Breach of Contract Exclusion to be unambiguous, and therefore concluded that the language contained in the endorsement controlled. See S.D. docket no. 19 p. 19. Thus, whereas this Court determined that the Breach of Contract Exclusion should not be read to cover any and all claims related to property damage caused solely by Defendants' subcontractors' allegedly defective work, the Southern District Order determined that the Breach of Contract endorsement "limit[ed] the terms of the subcontractor exception" and excluded coverage of property damage regardless of whether it was the result of faulty workmanship by the insured or the insured's subcontractors. Compare docket no. 19 pp. 15-17 with S.D. docket no. 19 pp. 18-19.
The Court has carefully considered the Southern District Order and the arguments raised in the briefing related to Mt. Hawley's Motion for Reconsideration in this case. The Court continues to believe that the determination as to the exact scope of the Breach of Contract Exclusion is a difficult issue in light of the existence of the Subcontractor Exception to the Your Work Exclusion, and there appears to be little precedent directly on point. Indeed, the apparent disagreement between the Prior Order and the Southern District Order only highlights that fact.
However, after reviewing the information and arguments provided by the parties, the Court believes that reconsideration is appropriate with respect to this Court's prior conclusion that Mt. Hawley has a duty to defend Defendant(s) in the Underlying Suit. In reaching its conclusion, the Court has not been persuaded by Mt. Hawley's arguments regarding why it contends that the Court's prior interpretation of the Breach of Contract Exclusion is incorrect. Indeed, certain of Mt. Hawley's arguments misstate the Court's prior conclusions.[7] Instead, upon a second review of the allegations asserted against Huser and Huser Construction in the Underlying *799 Suit, it is clear that the claims and allegations made by the City against Defendants are excluded by the Policies' Breach of Contract Exclusion even if a more limited interpretation of the Breach of Contract Exclusion is adopted.
For the purposes of completeness, the Court will first discuss the scope of the Breach of Contract Exclusion before explaining why the claims alleged in the Underlying Suit appear to be excluded under the Policies.[8]
I. Scope of the Breach of Contract Exclusion
In the Prior Order, the Court adopted a more limited interpretation of the Breach of Contract Exclusion contained in the Policies, and the Court's basis for its decision was rooted in the rules regarding the interpretation of contacts under Texas law. Specifically, "an interpretation that gives a reasonable meaning to all provisions is preferable to one that leaves a portion of the policy useless, inexplicable, or creates surplusage." Liberty Mut. Ins. Co. v. Am. Emp'rs Ins. Co. , 556 S.W.2d 242, 245 (Tex. 1977). When construing a policy, all parts of the policy are read together to ascertain the agreement of the parties. Forbau v. Aetna Life Ins. Co. , 876 S.W.2d 132, 133 (Tex. 1994). Thus, as discussed above, the Court's Prior Order interpreted the contract such that both the Subcontractor Exception to the Your Work Exclusion and the Breach of Contract Exclusion were given meaning.
In reaching the conclusion, this Court recognized that an endorsement to an insurance policy controls in the event of an actual conflict with other terms in the policy and that the purpose of the Breach of Contract Exclusion is to limit the coverage afforded by the Policies. See Westchester Fire Ins. v. Heddington Ins. Ltd. , 883 F. Supp. 158, 165 (S.D. Tex. 1995). However, in this case, it is not clear that the Breach of Contract Exclusion and Subcontractor Exception to the Your Work Exclusion necessarily conflict, and instead, this Court previously found (and continues to believe) that the scope of the Breach of Contract Exclusion is ambiguous. See docket no. 19 pp. 15-17; see also Mt. Hawley Ins. Co. v. Aguilar , No. SACV 07-00969-CJC, 2008 WL 11342656, at *3 (C.D. Cal., Feb. 2, 2008) (finding the identical breach of contract exclusion contained in a separate Mt. Hawley policy to be "ambiguous" such that its exact scope could not be determined). Under Texas rules of insurance policy interpretation, such ambiguity in the policy must be construed "strictly against the insurer and liberally in favor of the insured." Barnett v. Aetna Life Ins. Co. , 723 S.W.2d 663, 666 (Tex. 1987). Further, an "even more stringent construction is required" in favor of the insured "where the ambiguity pertains to an 'exception or limitation on [the insured's] liability under the policy.' " Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC , 620 F.3d 558, 562-63 (5th Cir. 2010) (quoting Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp. , 1 F.3d 365, 369 (5th Cir. 1993) ).
Consequently, the court must adopt the "construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if *800 the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." Glover v. Nat'l Ins. Underwriters , 545 S.W.2d 755, 761 (Tex. 1977). In the Court's view, the construction of the Breach of Contract Exclusion proposed by Defendants "is not itself unreasonable," and as discussed in the Prior Order, it is reasonable to interpret the relevant Breach of Contract Exclusion as to apply to property damage resulting from a breach of contract by the insured (as opposed to an insured's subcontractor or any other party to any other agreement at all related to construction at the site). See docket no. 19 p. 15-17. Indeed, this Court is not the first court to find the same interpretation to be the more reasonable reading of the Breach of Contract Exclusion contained in Mt. Hawley's Policies. See Aguilar , 2008 WL 11342656, at *3 ("[A] more reasonable interpretation of this exclusion is that it pertains to [the insured's] liability for repairing its own deficient work or to specific contractual obligations that [the insured] has assumed."). Finally, this interpretation of the Breach of Contract Exclusion is also supported by-and seemingly consistent with-the existence of the Subcontractor Exception to the Your Work Exclusion.
Accordingly, the Court declines to reverse its prior conclusion regarding the scope of the Breach of Contract Exclusion. However, the Court will again consider whether the allegations made against Huser and Huser Construction in the Underlying Suit are captured by the Breach of Contract Exclusion such that Mt. Hawley has no duty to defend.
II. Allegations in the Underlying Suit
Having found that it is reasonable to read the Breach of Contract Exclusion such that it only excludes property damage allegedly resulting from a breach of Defendants' own contractual obligations (as opposed to any breach of any contract by any party with any relation to the site), the Court concludes that even that more limited scope still appears to cover all alleged property damage in the Underlying Suit.
As an initial matter, the Court previously distinguished Defendants' causation of property damage with Defendants' ultimate contractual liability for damages at the site. See docket no. 19 p. 12. Mt. Hawley's prior briefing conflated the two, and the Court noted that "merely because Huser may ultimately be liable for certain of the City's economic losses under a breach of contract theory does not necessarily mean that all of the alleged property damage was causally attributable to Huser's alleged breach of its contract with the City." Id. Thus, in the event that certain of the property damage at the site was caused solely by Defendants' subcontractors' defective work and was not the result of any breach by Defendants of their own contractual obligations, this Court concluded that the allegations in the Underlying Suit "potentially support[ed] a covered claim." See docket no. 19 p. 17 (citing Zurich Am. Ins. Co. , 268 S.W. 3d at 490 ).
Although the Court stands by its prior conclusion in the abstract, in this case, the allegations in the Underlying Suit demonstrate that all of the alleged property damage was causally attributable to Defendants' alleged breach of their contractual obligations. Specifically, the Court's Prior Order did not properly account for the fact that Huser and Huser Construction agreed to numerous additional obligations under their contract with the City far exceeding a basic agreement not to themselves perform faulty workmanship at the site. For example, the allegations in the Underlying Suit allege that Huser Construction was tasked with: (i) managing onsite construction *801 activities during the Project; (ii) providing onsite quality control and quality assurance during the project; and (iii) coordinating completion of all outstanding work on the project. See docket no. 54-2 ¶ 3.4. The Underlying Suit further alleges that the allegedly defective work completed by Huser Construction's subcontractor, Cody Pools, was done "at Huser Construction's direction," and in light of Huser Construction's quality assurance and quality control obligations, Huser Construction breached its contract "by failing to ensure that Huser's subcontractor performed its Work in accordance with the Contract Documents." See id. at ¶¶ 3.7-3.8. Finally, the Underlying Suit alleges that the agreement between Defendants and the City "requires [Huser] (including its individual members) to correct all defective work," and the Underlying Suit further alleges that Huser and Huser Construction have not corrected the non-conforming work despite notice and demand. See id. at ¶ 3.10.
The aforementioned allegations clearly demonstrate that this is not a scenario in which the alleged property damage may have been caused solely by a breach of contract by Defendants' subcontractors, such that Defendants' subcontractors were a truly "independent" cause of the property damage. Instead, even assuming Defendants' subcontractors were initially responsible for the faulty workmanship, Huser and Huser Construction allegedly breached the contract with the City by not properly supervising the work and/or by not repairing work per their contractual obligations. Indeed, according to the pleadings in the Underlying Suit, had Defendants' complied with their obligations to repair the work, the alleged property damage that is the subject to the Underlying Suit would not exist.[9] Thus, Defendants ' breaches of contract are alleged "but for" causes of all property damage at the site, regardless of whether the damage was caused by the work performed by Defendants or whether it was caused by Defendants' failure to supervise and/or repair faulty construction by Defendants' subcontractors. Accordingly, the Court concludes that the contract claims in the Underlying Suit plainly relate to "property damage" that "arises directly or indirectly" out of Defendants' alleged breach of their own contractual obligations. See docket no. 54-3 p. 52. For that reason, the Breach of Contract Exclusion in the Policies applies with respect to the City's breach of contract claims against Defendants in the Underlying Suit.
Finally, in addition to the City's claims for breach of contract, the Underlying Suit also contains claims of negligence against Defendants. See docket no. 54-2 ¶¶ 4.5-4.8. The Court concludes that these allegations in the Underlying Suit are also encompassed by the Breach of Contract Exclusion in the Policies. See Scottsdale Ins. Co. v. Mt. Hawley Ins. Co. , No. M-10-58, 2011 WL 9169946 (S.D. Tex. June 15, 2011) (finding that same Mt. Hawley Breach of Contract Exclusion also excluded coverage of certain underlying claims asserted under theory of negligence). In Scottsdale , the district court held that the Breach of Contract Exclusion contained in *802 Mt. Hawley's policies excluded coverage of claims asserted under a theory of negligence if the "negligence" bears an "incidental relationship" to the alleged breach of contract and/or warranty by the insured.[10] 2011 WL 9169946, at *8. Here, just as was the case in Scottsdale , it is apparent that the City's allegations of negligence against Defendants relate to the same alleged conduct as that underlying Defendants' alleged breach of contract. Specifically, the City's negligence claim alleges that Defendants "failed to perform the work in a good and workmanlike manner," "failed to comply with the plans and specifications," and "failed to act in a manner that conformed with the standard of care ordinarily employed by prudent design-builders." See docket no. 54-2 ¶¶ 4.6-4.7. Each of those allegations overlaps with, or is, at minimum, "incidentally related" to, the allegations regarding Defendants' alleged breaches of their contracts and/or warranties with the City.[11] Therefore, Mt. Hawley's Breach of Contract Exclusion also excludes coverage with respect to the negligence claims against Defendants in the Underlying Suit.
In sum, the Breach of Contract Exclusion in the Policies applies to both the contract and negligence claims asserted against Defendants in the Underlying Suit. Therefore, the Court concludes Mt. Hawley owes no duty to defend in the Underlying Suit, and Mt. Hawley's Motion for Reconsideration (docket no. 34) will be granted as to the Court's prior conclusion with respect to Mt. Hawley's duty to defend.
CONCLUSION AND ORDER
For the reasons set forth above, Mt. Hawley's Motion for Reconsideration (docket no. 34) is GRANTED.
IT IS THEREFORE ORDERED that Mt. Hawley's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment (docket no. 13) is GRANTED with respect to the duty to defend, and summary judgment is issued in favor of Mt. Hawley with respect to Mt. Hawley's request for declaratory judgment on the issue of the duty to defend. Mt. Hawley has no duty to defend Defendants in the Underlying Suit.
IT IS FURTHER ORDERED that Huser's Motion for Summary Judgment on the Duty to Defend (docket no. 11) is DENIED.
IT IS FURTHER ORDERED that Mt. Hawley's Motion for Certification of Appeal (docket no. 24) is DENIED AS MOOT.
*803 IT IS FURTHER ORDERED that, in light of the fact that certain claims remain unresolved[12] -within fourteen (14) days of the date of this Order-the parties jointly file a proposed revised scheduling order for this action.
IT IS SO ORDERED.

At the time of this Court's Prior Order (docket no. 19), Defendant Huser Construction had not yet been named as a party. Thus, in order to use a consistent naming convention across the Court's orders, the Court will continue to refer to Defendant Slay Engineering, Texas Multi-Chem, Huser Construction LLC as "Huser," and Defendant Huser Construction Co., Inc. will be referred to as "Huser Construction."

Whereas this action relates to a coverage dispute concerning a municipal construction project in Jourdanton, Texas, the Southern District Litigation relates to a coverage dispute concerning the construction of an apartment complex in Pleasanton, Texas. Compare docket no. 51-2 with S.D. docket no. 1.

For the purposes of references in this Order, the docket in the Southern District Litigation will be referenced as the "S.D. docket."

Pursuant to Section I.2.1 of the Policies, coverage excludes " '[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products completed operations hazard.' " See, e.g. , docket no. 54-3 at p. 8 (the "Your Work Exclusion"). However, the Policies provide that "[t]his exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Id. (the "Subcontractor Exception"). The breach of contract exclusion is contained in an endorsement towards the end of the Policies. See, e.g , docket no. 54-3 p. 52 (the "Breach of Contract Exclusion").

The allegations in the Underlying Suit suggest that Huser and/or Huser Construction's subcontractors, including Cody Pools, Inc. ("Cody Pools") may be, at least in part, responsible for the defects at the site. See docket no. 54-2 ¶¶ 3.6-3.8. The Prior Order contains a more detailed discussion of the background leading up to this lawsuit. See docket no. 19 pp. 1-5.

In light of the Court's determination with respect to the merits of Mt. Hawley's Motion for Reconsideration, it is unnecessary for the Court to address the merits of Mt. Hawley's Motion for Certification of Appeal.

Contrary to Mt. Hawley's assertions, this Court did not find that the Subcontractor Exception to the Your Work Exclusion "created" or "preserved" coverage under the Policies that would otherwise be excluded by the Breach of Contract Exclusion. See docket no. 24 p. 6 & docket no. 34 p. 8. Instead, the Court relied in part on the existence of the Subcontractor Exception when determining whether the interpretation of the Breach of Contract Exclusion advanced by Huser was reasonable and/or more natural than the "sweeping interpretation" asserted by Mt. Hawley. See docket no. 19 pp. 15-17.

As discussed in the Prior Order, the Court applies the "eight comers" rule to determine whether Mt. Hawley has a duty to defend Defendants in the Underlying Suit. See docket no. 19 p. 9. "The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant." GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church , 197 S.W.3d. 305, 308 (Tex. 2006).

The Prior Order accurately noted that Huser had a contractual obligation to correct nonconforming work at the site, but nonetheless concluded that the Huser's subcontractors were potentially an "independent" cause of the underlying property damage because the damage could exist "even absent the excluded conduct" by Huser. See docket no. 19 pp. 14-15. Upon further review of the City's pleading in the Underlying Suit, it is clear that-at least according to the City's allegations-the property damage at the site only exists because Defendants allegedly breached their contract by failing to properly supervise construction and/or repair defects at the site.

The Court previously explained why it found Scottsdale to be less persuasive with respect to the issue of whether the Breach of Contract Exclusion also extended to bar coverage for the insured in instances in which the property damage was caused solely by the faulty workmanship (and/or a breach of contract) by a party other than the insured (e.g. , an insured's subcontractor). See docket no. 19 p. 14 n.6. Notably, the court in Scottsdale agreed that Mt. Hawley's Breach of Contract Exclusion had some limitation as to its reach, as the Scottsdale court commented that "if the Mt. Hawley exclusion could reach any claim against an insured whose work is contractual in nature, it would render coverage illusory." 2011 WL 9169946, at *9.

Both the contract and negligence claims incorporate and reference the same alleged facts. See docket no. 54-2 ¶¶ 4.1 & 5.1. More specifically, the underlying negligence claims against Defendants directly parallel the City's breach of contract cause of action in the Underlying Suit. Compare docket no. 54-2 ¶ 4.2 (alleging that Huser "materially breached the contract by ... failing to construct the Project in accordance with the Contract and Contract Documents ....") with id. at ¶ 4.6 (alleging that Huser and Huser Construction "breached their duties of care and acted negligently by ... fail[ing] to comply with the plans and specifications.").

This Order does not resolve the merits of Mt. Hawley's request for declaratory judgment with respect to its duty to indemnify nor does it address the merits of Defendants' pending counterclaims. Although Mt. Hawley's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment also sought summary judgment with respect to Mt. Hawley's duty to indemnify and Huser's insurance code counterclaims, see docket no. 13 pp. 16-17, the Court believes it would be improper to enter judgment at this stage as to those issues in light of the fact that the parties' reconsideration briefing focused almost exclusively on Mt. Hawley's duty to defend. Moreover, Texas law is clear that a duty to indemnify may ultimately exist even if an insurer has no duty to defend a lawsuit based on the allegations in the pleadings. See D.R. Horton-Texas, Ltd. v. Market Int'l Ins. Co. , 300 S.W.3d 740, 743-45 (Tex. 2009) ; Colony Ins. Co. v. Peachtree Constr., Ltd. , 647 F.3d 248, 254 (5th Cir. 2011). However, in the event Mt. Hawley contends that it is necessarily entitled to judgment on any other pending claim(s) in light of the conclusions in this Order, Mt. Hawley may file a renewed motion. In the event such a motion is filed, Defendants will be afforded an opportunity to directly respond.